IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAVIS SMELTZ, | : | No. 3:23cv636 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| ALEJANDRO N. MAYORKAS, | : | |
| SECRETARY, DEPARTMENT OF | : | |
| HOMELAND SECURITY; and | : | |
| SECRETARY OF THE | : | |
| TRANSPORTATION SECURITY | : | |
| ADMINISTRATION, | : | |
| Defendants | : | |

.....................................................................................

## MEMORANDUM

This is an employment discrimination and civil rights action filed by Plaintiff

Travis Smeltz against the Secretary of the United States Department Homeland

Security ("DHS") and the Secretary of the Transportation Security Administration[1]

("TSA").  Before the court is a motion to dismiss filed by the defendants for lack

of subject matter jurisdiction and for failure to state a claim. (Doc. 35).  Also

before the court is a request by the plaintiff to file a second amended complaint,

_____

[1] In an action filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the only proper defendant in a federal employee's Title VII action is the head of the appropriate agency. Wadhwa v. Sec'y, Dep't of Veterans Affs., 505 F. App'x 209, 213 (3d Cir. 2012)(citations omitted).  TSA is led by an administrator and a deputy administrator, not a secretary. See TSA Organizational Chart, https://www.tsa.gov/sites/default/files/tsa_org_chart_matrix.pdf (last accessed 09/19/2024). These administrators report to the Secretary of the Department of Homeland Security, which is presently Alejandro N. Mayorkas. See DHS Organizational Chart, https://www.dhs.gov/sites/default/files/2023-11/23_1109_mgmt_dhs-public-org-chart-508.pdf (last accessed 09/19/2024).

as asserted through his brief in opposition to the motion to dismiss. These matters are ripe for a decision.

**Background[2]**

Plaintiff was formerly employed by the defendants as a Federal Air Marshal for the Federal Air Marshal Service ("FAMS") at the Philadelphia Field Office. (Doc. 16, Am. Compl. ¶¶ 6-7, 14, 16). During his tenure, plaintiff served as a delegate for the Air Marshal Association ("AMA"), which is a "recognized member organization" that "seeks to improve the working conditions and pay status of its membership[,]" i.e., a labor organization. (Id. at ¶ 12).

In June and October 2019, in his role as AMA representative for the Philadelphia Field Office, plaintiff coordinated communications between AMA members who had Equal Employment Opportunity ("EEO") complaints against field office management and particular Assistant Supervisory Air Marshalls in Charge ("ASACs"). (Id. ¶ 16). Per plaintiff, he confronted field office management to resolve AMA member concerns. (Id.)

In November 2019, plaintiff raised concerns to management about a measuring system being used in performance evaluations provided to the

---

[2] These background facts derive from plaintiff's amended complaint. When considering the defendants' motion as filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all factual allegations in the plaintiff's amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

director of FAMS. (Id. at ¶¶ 17-18).  The measuring system at issue had been implemented by ASAC Clay Robbins ("ASAC Robbins"). (Id.)  Plaintiff's concerns about the measurement system included: 1) improper reference to and incorrect calculation of total flight days for employee yearly evaluations, 2) penalties for using approved leave (including medical leave) during employee rating periods; and 3) and issues with other subjective criteria being introduced into the evaluation process. (Id.)

In July 2020, plaintiff made a "wide-spanning retaliatory harassment complaint" against ASAC Robbins. (Id. ¶ 18). Plaintiff alleged in his harassment complaint that ASAC Robbins had unlawfully directed plaintiff's removal from an international mission roster due to plaintiff's medical leave status. (Id.)  Plaintiff also alleged that ASAC Robbins withheld plaintiff's name from a list of volunteers for a U.S. Secret Service detail opportunity and directed Jeffrey Kwam, plaintiff's first-line supervisor, "to make inquiries of plaintiff's role and involvement with the AMA as part of one of Plaintiff's performance appraisals." (Id. ¶¶ 15, 18). Plaintiff alleges that he made the complaint pursuant to TSA Management Directive 1100-73.3 ("MD 1100-73.3"). (Id.)  That directive expressly prohibits harassment and retaliation. (Id. ¶ 19).

3

TSA performed internal factfinding relative to plaintiff's harassment complaint against ASAC Robbins. (Id. ¶ 20).  ASAC Robbins was interviewed twice and provided two written statements during that factfinding. (Id. ¶ 21).

At some point in 2020, while the factfinding was ongoing, plaintiff applied for a vacancy on a local Joint Terrorism Task Force ("JTTF") based out of the Philadelphia Field Office. (Id. ¶¶ 8, 20).  Plaintiff interviewed before a panel. (Id. ¶ 9).  The panel was chaired by ASAC Robbins, the subject of plaintiff's harassment complaint. (Id. ¶¶ 9, 18, 20).  ASAC Robbins did not recuse himself from the panel or from plaintiff's interview. (Id. ¶ 37).

Then-acting Supervisory Air Marshal in Charge Robert Duerr ("SAC Duerr") was the "deciding official" for the JTTF position.  (Id. ¶ 31).  Per plaintiff, SAC Duerr and ASAC Robbins were aware of the harassment claims plaintiff previously raised against ASAC Robbins. (Id. ¶¶ 20-21, 23).  ASAC Robbins allegedly recommended to SAC Duerr that plaintiff not be selected and SAC Duerr rubber-stamped ASAC Robbins's recommendations.  (Id. ¶¶ 18, 42).

On January 7, 2021, plaintiff received notice that he did not get selected for the JTTF position. (Id. ¶ 11).  The agency investigation of plaintiff's harassment complaint against ASAC Robbins was not closed until January 26-27, 2021. (Id. ¶ 22).

Plaintiff asserts that the interview process was conducted in an unfair and inconsistent manner and that he was evaluated against other interviewees applying for a different position using different scoring criteria. (Id. ¶¶ 27-30). Plaintiff also avers various discrepancies in the scoring and ranking of candidates, which he alleges was meant to intentionally obscure proof that plaintiff was the best candidate for the position. (Id. ¶ 34). Another panelist "stated it was 'unknown' how the person selected for the position was more qualified than [p]laintiff." (Id. ¶ 35).

As a result of his non-selection for the JTTF position, plaintiff filed a complaint for discrimination with the TSA EEO office in February 2021. (Id. ¶ 43). The EEO division investigated and conducted a series of hearings and administrative proceedings regarding the EEO complaint. (Id. ¶ 44). Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission and plaintiff ultimately received a notice of the right to sue. (Id.).

Plaintiff also alleges that, as the result of events transpiring during his employment at the Philadelphia Field Office, he "retired/resigned" on June 30, 2021, following approximately twenty (20) years of service to FAMS.[3] (Id. ¶ 47).

---

[3] The amended complaint also raises other instances of harassment. (Doc. 16, Am. Compl. ¶ 45-46). It is unclear if these matters were included in the administrative proceedings as part of the harassment complaint or whether plaintiff makes these allegations in support of a claim for constructive discharge. (Id. ¶ 47).

Based on the above facts, plaintiff's amended complaint asserts six (6) claims.  Count One asserts a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Count Two alleges disparate treatment in violation of Title VII.  Count Three avers that the defendants violated 42 U.S.C. § 1983 ("Section 1983") by depriving him of his rights to free speech and association protected by the First Amendment and his due process rights protected by the Fourteenth Amendment.  Count Four asserts a claim for civil conspiracy in violation of 42 U.S.C. § 1985 ("Section 1985").  Counts Five and Six assert claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

Defendants responded by filing the instant motion to dismiss all claims. (Doc. 17).  In opposing the motion, plaintiff argues that he has stated a viable claim for retaliation in violation of Title VII. (Doc. 22, Pl. Br. in Opp. at 3-5).  As for the remaining claims, plaintiff requests leave to file a second amended complaint. (Id. at 5-6).  Defendants oppose and argue that plaintiff's request for amendment is improperly asserted and factually unsupported. (See Doc. 23, Def. Rep. Br. at 4-6).  Having been briefed by the parties, this matter is ripe for disposition.

**Jurisdiction**

Because this case is brought pursuant to Title VII, Section 1983, and Section 1985, the court ostensibly has jurisdiction pursuant to 28 U.S.C. § 1331.

6

("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Plaintiff's tort claims are brought against the federal government. Ostensibly, the court also has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1). ("the district courts…shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."). As discussed below, jurisdiction is disputed with regard to some of plaintiff's claims.

**Legal Standards**

### 1. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion to dismiss filed pursuant to Rule 12(b)(1) thus challenges the power of a federal court to hear a claim or case. See Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." Gould Elecs. Inc. v. United

States, 220 F.3d 169, 178 (3d Cir. 2000), holding modified by Simon v. United States, 341 F.3d 193 (3d Cir. 2003); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

### 2. Failure to State a Claim

The government also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to

8

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

As noted above, the defendants move to dismiss all six (6) claims asserted in the amended complaint. Plaintiff opposes the dismissal of his Title VII retaliation claim and requests leave to file a second amended complaint regarding the other claims. The court will address these issues in turn.

### 1. Title VII Retaliation Claim

Plaintiff asserts a retaliation claim pursuant to Title VII. Title VII includes a specific provision applicable to federal employees, including employees of the Federal Air Marshal Service ("FAMS"), 42 U.S.C. § 2000e–16. See Stone v. Sec'y United States Dep't of Homeland Sec., 705 F. App'x 76, 78, n. 2 (3d Cir. 2017)(indicating that a district court had jurisdiction to hear a Federal Air Marshal's retaliation claim pursuant to this statute). Title VII's federal-sector provision provides that, "[a]ll personnel actions affecting employees. . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

Title VII's private-sector provisions explicitly prohibit retaliation by employers. Komis v. Sec'y of United States Dep't of Lab., 918 F.3d 289, 294 (3d

Cir. 2019)(citing 42 U.S.C. § 2000e–3(a)).  As drafted, Title VII's federal-sector provision does not. Id.  Nonetheless, in order achieve parity between the private sector and the federal sector in employment discrimination matters, the Third Circuit Court of Appeals recognizes that federal employees may bring retaliation claims pursuant to Title VII. See id. at 295.

"Title VII makes it unlawful for an employer to retaliate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter ....' " Kengerski v. Harper, 6 F.4th 531, 536 (3d Cir. 2021)(quoting 42 U.S.C. § 2000e-3(a)).[4]  It is also unlawful to retaliate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

---

[4] Unlawful employment practices also include the following:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1)-(2).

10

To prevail on a claim for retaliation under Title VII, a federal employee must prove that (1) they engaged in activity protected by Title VII, (2) their employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the adverse action and the protected activity. Wadhwa, 505 F. App'x at 213 (citing Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006)); Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007).

Proceeding under Rule 12(b)(6), the government argues the plaintiff fails to allege that he engaged in protected activity.  After careful review of the amended complaint, the court agrees.

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."  Moore, 461 F. 3d at 341 (citing Slagle v. Cnty of Clarion, 435 F.3d 262, 266 (3d Cir. 2006)).  General complaints about unfair treatment are insufficient to establish protected activity under Title VII.  Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006)(citing Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995)).

Plaintiff's amended complaint alleges that, as a delegate for the AMA labor organization, he opposed a particular measuring system being used in

11

performance evaluations. (Doc. 16, Am. Compl, ¶ 17).  He does not allege,

however, how this measuring system discriminated based upon race, color,

religion, sex, and/or national origin.  Plaintiff also avers that he "coordinated

communications between AMA members who had EEO complaints against field

office management and particular ASACs, and confronted field office

management in an effort to resolve member concerns." (Id. ¶ 17).  He does not

allege, however, that the EEO complaints pursued by other AMA members were

Title VII proceedings, i.e., challenging practices that discriminated against those

AMA members based on race, color, religion, sex, and/or national origin.

Additionally, in considering plaintiff's claim for retaliation based on his own

reports of harassment and discrimination, he does not indicate how he fits into

the categories protected by Title VII.  Plaintiff avers that he is male and

Caucasian, but he does not aver that he was discriminated against based on sex

or race. (See id. ¶ 6).  Instead, he alleges that he made a harassment and

discrimination complaint against ASAC Robbins pursuant to TSA's own internal

anti-harassment program. (Id. ¶ 18).  He alleges that TSA Management Directive

1100.73 was violated. (Id.)  Quoting that directive, he avers that the prohibited

harassment in his case was "unwelcome conduct…that has the purpose or effect

of…creating an intimidating, offensive or hostile environment as a result of an

individual's…political affiliation, participation in protected activity, or any other

basis protected by law." (Id.)  Political affiliation is not a category protected by Title VII.   Moreover, as stated above, the complaint does not reference whether plaintiff engaged in protected activity relative to participating in Title VII proceedings or opposing practices made unlawful by Title VII.

As explained by the Supreme Court of the United States, "[t]he antidiscrimination provision" of Title VII "seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–801 (1973)). "The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  Id.  In other words, to avail themselves of Title VII's anti-retaliation provision, employees must demonstrate that they made efforts to secure or advance enforcement of provisions guaranteeing that workers will not be harassed or discriminated against in the workplace based on their racial, ethnic, religious, or gender-based status.  See Moore, 461 F.3d at 341 ("Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose

is unlawful under Title VII.")(citation omitted).  Plaintiff's amended complaint does

not draw those connections and thus fails to state a Title VII retaliation claim.

As discussed in more detail below, however, plaintiff has requested leave

to file a second amended complaint.  In civil rights cases, "district courts must

offer amendment—irrespective of whether it is requested—when dismissing a

case for failure to state a claim unless doing so would be inequitable or futile."

Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d

Cir. 2007).  As for futility of amendment, in reviewing the amended complaint,

which is not a model of clarity, the court cannot rule out whether plaintiff

participated in Title VII-related EEO proceedings or opposed discrimination made

unlawful by Title VII.  As for the equities, the amended complaint was plaintiff's

first attempt to state a Title VII retaliation claim.[5]  Accordingly, the plaintiff will be

granted leave to file a second amended complaint with additional facts to support

his Title VII retaliation claim.  If plaintiff fails to file a second amended complaint

within twenty-one (21) days, this claim will be dismissed with prejudice.

## 2. Leave to Amend the Remaining Claims

Regarding the other claims in the amended complaint, plaintiff's Title VII

discrimination claim and his Section 1983, Section 1985, and state law causes of

---

[5] In Count I of the original complaint, plaintiff asserted claims for violation of the federal sector provision of the Age Discrimination in Employment Act, 29 U.S.C. § 633a(a). (Doc. 1, Compl. (sealed)).

14

action, plaintiff seeks leave to file a second amended complaint. Plaintiff, however, offers nothing to support his request for amendment. By not attaching a proposed second amended complaint or referencing additional matters in his brief in opposition to the motion to dismiss, there are no other alleged facts for the court to consider. Plaintiff also does not offer whether he will stand on the causes of action in the amended complaint or pursue his case with different theories of liability.

Pursuant to the Federal Rules of Civil Procedure, however, courts are instructed to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be given absent any "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182 (1962).

The government argues that amendment would be futile for the reasons asserted in its brief supporting the motion to dismiss. (Doc. 23, Def. Reply Br. at 4-6). "In assessing futility [of amendment], the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(citation and internal quotation marks omitted). In a circular way, the court must reach the merits of

15

whether plaintiff states a claim or could state a claim.  Nonetheless, by not countering the motion to dismiss with substantive arguments in opposition (other than the Title VII retaliation claim) or with a draft second amended complaint, the government's arguments about futility are considered in a vacuum.

The court will thus consider defendants' arguments against the merits or potential merits of plaintiff's remaining claims, which he pursues pursuant to Title VII, Section 1983, Section 1985 and state tort law.  Where a claim is subject to dismissal, the court will then consider whether amendment would be futile.

### a. Title VII Disparate Treatment Claim

Count II of the amended complaint asserts a claim for disparate treatment in violation of Title VII.  The government moves to dismiss for failure to state a claim.  To make a *prima facie* case of discrimination, a plaintiff must establish that: 1) he is a member of a protected class; 2) he was qualified for the position he sought to attain or retain; 3) he suffered adverse employment action; and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)(citations omitted).

Plaintiff's amended complaint avers his sex and race, which are protected classes. (Doc. 16, ¶ 6).  But, as discussed above, plaintiff does not connect the

16

allegations of intentional discrimination to his sex or his race.[6]  Rather, the core

of plaintiff's allegations focuses on retaliation by ASAC Robbins for plaintiff's

participation in the AMA, a labor organization, and his efforts on behalf of AMA

members in their EEO proceedings.  Accordingly, plaintiff's Title VII disparate

treatment claim is subject to dismissal.

The question remains whether amendment would be futile.  Although this is

an employment discrimination and civil rights case, by not filing a draft second

amended complaint, the court has "nothing upon which to exercise its discretion"

in granting or denying the amendment. Ramsgate Ct. Townhome Ass'n v. W.

Chester Borough, 313 F.3d 157, 161 (3d Cir. 2002)(citing Lake v. Arnold, 232

F.3d 360, 374 (3d Cir. 2000)).

Even so, plaintiff has already offered approximately eight (8) pages of

factual averments to support his claims in the amended complaint.  (Doc. 16, Am.

Compl. at 1-9).  If the plaintiff had possession of facts, such as that ASAC

Robbins discriminated against the plaintiff because the plaintiff is male and

Caucasian, plaintiff would have made those averments in the first instance or

offered them in a brief in opposition, a motion to amend, or a proposed second

amended complaint. See Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 206

---

[6] Count Two includes an averment that he was a member of a protected class as an adult over
the age of 40. (Doc. 16, ¶ 58).  But age is not a protected class under Title VII and plaintiff
abandoned his ADEA claim earlier in this litigation.

(3d Cir. 2006).  Under the circumstances, the court has no reason to believe that amendment would cure the identified defects in plaintiff's Title VII disparate treatment claim. Plaintiff's Title VII disparate treatment claim in Count II of the amended complaint will thus be dismissed with prejudice without leave to amend.

### b. Section 1983 Claim

As for plaintiff's remaining claims brought pursuant to Section 1983, Section 1985, and state tort law, the government argues that the court lacks subject matter jurisdiction, and that plaintiff has failed to state viable claims. Based on the unorthodox posture of this case where the plaintiff has not offered opposition to the government's arguments, but has asked for leave to amend, the court will take a practical approach.  As discussed below, plaintiff's Section 1983 claim can be disposed of without consideration of subject matter jurisdiction.

In this matter, plaintiff specifically avers that his Section 1983 claims are grounded in the rights secured by the First and Fourteenth Amendments, specifically freedom of speech and association and his rights to due process. (Doc. 16, Am. Compl. ¶¶ 64, 66-67).  The Fourteenth Amendment applies to actions of the states and not the federal government, so that portion of plaintiff's Section 1983 claims will be dismissed without additional discussion. See Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).

As for plaintiff's claim based upon the First Amendment, Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir.1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

"Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law." Hindes v. F.D.I.C., 137 F.3d 148, 158 (3d Cir. 1998)(citations omitted).  On the other hand, it is well-established "that federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of state law, for example in conspiracy with state officials." Id. (citations omitted).

This is not a case alleging that federal officials conspired with state actors. Rather, all of plaintiff's allegations concern the conduct of Federal Air Marshals and administrators within the FAMS Philadelphia Field Office.  All of these facts

19

implicate actions taken under color of federal law by federal actors in FAMS.

Section 1983 liability "will not attach for actions taken under color of federal law."

Brown, 250 F.3d at 800 (citing Bethea v. Reid, 445 F.2d 1163, 1164 (3d Cir.

1971).  Consequently, plaintiff's Section 1983 cause of action will be dismissed

without leave to amend.[7]

### c. Section 1985 Claim

Count Four of plaintiff's amended complaint asserts a claim pursuant to 42

U.S.C. § 1985(3).  "Section 1985(3) permits an action to be brought by one

injured by a conspiracy formed for the purpose of depriving, either directly or

indirectly, any person ... of the equal protection of the laws, or of equal privileges

and immunities under the laws." Farber v. City of Paterson, 440 F.3d 131, 134

(3d Cir. 2006) (internal quotation marks and citation omitted).  Section 1985(3)

claims "can reach private as well as public conspiracies that seek to deprive a

class of equal protection of the laws or equal privileges under the laws." Id. at

135 (citing Griffin v. Breckenridge, 403 U.S. 88, 101 (1971)).

---

[7] The government also argues that any Section 1983 claim construed as a constitutional tort pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) would also fail. Plaintiff has not sought remedies pursuant to Bivens or otherwise signaled that he would attempt to proceed with such claims, so the court need not address this argument other than in passing. The scope of Bivens is narrow. See Egbert v. Boule, 596 U.S. 482, 490–91 (2022)(detailing three types of cases for which the remedy is available).  Expanding Bivens remedies is a disfavored judicial activity. Ziglar v. Abbasi, 582 U.S. 120, 135 (2017)(citation omitted).  More than forty years ago, the United States Supreme Court rejected the expansion of Bivens remedies to First Amendment speech claims involving federal employment. Bush v. Lucas, 462 U.S. 367 (1983).

Defendants raise two arguments against plaintiff's Section 1985(3) claim: 1) Congress has not waived sovereign immunity; and 2) the law prevents plaintiff from invoking Section 1985(3) to redress violations of Title VII.  The first argument challenges the court's subject matter jurisdiction and the second argues that plaintiff has failed to state a claim.  Each of these arguments goes unrebutted by plaintiff.

As for the merits of the government's jurisdiction argument, "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." Treasurer of New Jersey v. U.S. Dep't of Treasury, 684 F.3d 382, 395 (3d Cir. 2012); see also Biase v. Kaplan, 852 F. Supp. 268, 280 (D.N.J. 1994)(summarizing sovereign immunity jurisprudence and concluding that a Section 1985(3) claim cannot be brought against a federal agency).  Plaintiff's Section 1985(3) is thus subject to dismissal to the extent that it is raised against the United States of America, DHS, TSA, and federal officials acting in their official capacities.

Nonetheless, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182.  In considering whether plaintiff should be given a chance to amend, it is possible that plaintiff may make a Section 1985(3) claim under the facts presented in the amended complaint, just

21

not against the defendants as named. "A significant consensus" of Courts of Appeals, including the Third Circuit, has recognized that Section 1985(3) claims can be brought against federal actors. Davis v. Samuels, 962 F.3d 105, 114–15 (3d Cir. 2020). Thus, there is precedent to support Section 1985(3) being used to "redress conspiracies to violate constitutional rights involving those acting under color of federal law." Id. at 115. Upon review of plaintiff's amended complaint, it appears that plaintiff can perhaps state a claim against individuals within FAMS for conspiracy to deprive him of his constitutional rights with additional allegations.

Plaintiff's claims against these individuals may ultimately be futile. See Ziglar v. Abbasi, 582 U.S. 120, 155 (2017)(determining that federal officials were entitled to qualified immunity from Section 1985(3) claims under the facts of that case). But the court cannot appreciate the contours and nuances of plaintiff's potential claim at this time. See Davis, 962 F.3d 114 (vacating dismissal of a Section 1985(3) claim asserted against federal defendants from two different agencies without opining on the merits of the claim); see also Novotny v. Great Am. Fed. Sav. & Loan Ass'n, 584 F.2d 1235, 1259 (3d Cir. 1978) (holding that an intracorporate conspiracy can exist among officers and employees of the same corporation), vacated on other grounds, 442 U.S. 366 (1979); cf. Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431 (3d Cir. 1988)(holding that a plaintiff

22

may not maintain a Section 1985(3) claim alleging a conspiracy between a corporation and one of its officers acting in an official capacity)(citations omitted).

The court will thus permit plaintiff to amend his Section 1985(3) claim in a second amended complaint.[8]  If plaintiff fails to file a second amended complaint within twenty-one (21) days, this claim will be dismissed with prejudice.

### d. State Law Claims

Finally, the government moves to dismiss plaintiff's state law tort claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"), arguing that plaintiff failed to exhaust his administrative remedies pursuant to the Federal Tort Claims Act, ("FTCA").  "The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."  Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018)(citing Berkovitz v. United States, 486 U.S. 531, 536 (1988); 28 U.S.C. §§ 2671–2680).  The FTCA requires claimants to exhaust administrative remedies

---

[8] The government argues that the Section 1985(3) claim is invoked improperly to redress violations of Title VII.  It is well-settled that the deprivation of a right created by Title VII cannot be the basis for a cause of action under Section 1985(3). Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979).  As discussed in this memorandum, however, plaintiff's Title VII retaliation claim is suspect and subject to dismissal if plaintiff cannot plead facts plausibly making out that claim in a second amended complaint.  Furthermore, the Federal Rules of Civil Procedure permit alternative claims. FED. R. CIV. P. 8(d)(2).  Accordingly, the court need not address the government's argument to preclude parallel Title VII and Section 1985(3) claims at this time.

before filing suit against the United States. See McNeil v. United States, 508 U.S. 106, 113 (1993).

In arguing noncompliance with the administrative prerequisites of the FTCA, the government challenges the court's subject matter jurisdiction pursuant to Rule 12(b)(1).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Elecs. Inc., 220 F.3d at 176.  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," but "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." Id. (citations omitted).

By submitting a declaration from Sherry Johnson, Chief of the Claims, Outreach & Debt Branch of TSA regarding the issue of administrative exhaustion, (Doc. 19-2), the government proceeds with a factual challenge.  But the government's factual attack is premature. A factual attack to subject matter jurisdiction can only occur in the proceedings "from the time the answer has been served until after the trial has been completed." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 892 (3d Cir. 1977); see also Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)(determining that it was error for a district court to construe a motion to dismiss as a facial attack where the

24

defendants attacked the facts supporting jurisdiction before they answered the complaint).

The government has not filed an answer to the plaintiff's complaint. Thus, the court can thus only consider the motion to dismiss as a facial attack to subject matter jurisdiction. See Nigro v. Pa. Higher Educ. Assistance Agency, No. 1:19-CV-02000, 2020 WL 5369980, at *5 (M.D. Pa. Sept. 8, 2020)(Wilson, J.)(citing Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 320 (3d Cir. 2018); Const. Party of Pa., 757 F.3d at 358)).

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Const. Party of Pa., 757 F.3d at 358 (internal quotation marks and citations omitted). The court applies the same standard of review it would when considering a motion to dismiss pursuant to Rule 12(b)(6). Id. Accordingly, because it exists outside the pleadings, the court disregards Johnson's statement about administrative exhaustion.

Upon review of the amended complaint, however, plaintiff does not aver whether he presented his emotional distress claims to TSA as the appropriate federal agency. See 28 U.S.C. § 2675(a). Plaintiff also does not aver whether he received a denial of such claims in writing or whether TSA failed to make final disposition of his claims within six (6) months. Id. Thus, the amended complaint

25

does not indicate that plaintiff exhausted his administrative remedies in accordance with the FTCA. Consequently, plaintiff has not demonstrated that the court has jurisdiction over his tort claims against the federal government. See 28 U.S.C. § 1346(b)(1). Based on this insufficiency, plaintiff's emotional distress claims are subject to dismissal.

Nonetheless, plaintiff has requested leave to file a second amended complaint. Under the circumstances, the court will permit plaintiff to amend his emotional distress claims in a second amended complaint to cure any deficiencies with his jurisdictional averments. If plaintiff fails to file a second amended complaint within twenty-one (21) days, these claims will be dismissed without prejudice. See New Jersey Physicians, Inc. v. President of U.S., 653 F.3d 234, 241, n 8. (3d Cir. 2011)(noting that a "dismissal for lack of subject matter jurisdiction was by definition without prejudice.")(citation omitted).

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss plaintiff's amended complaint will be granted. Plaintiff's Title VII disparate treatment claim (Count Two) and Section 1983 claim (Count Three) will be dismissed with prejudice. Regarding the other causes of action raised in the amended complaint, that is, plaintiff's Title VII retaliation claim, Section 1985(3) claim, and emotional distress claims, plaintiff is granted leave to file a second amended

26

complaint within twenty-one (21) days.  If plaintiff fails to file a second amended complaint, the court will dismiss plaintiff's remaining claims in accordance with this memorandum and direct the Clerk of Court to close this case.  An appropriate order follows.

Date: 9/25/24

JUDGE JULIA K. MUNLEY
United States District Court