## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRAVIS SMELTZ,                           :        No. 3:23cv636
                    Plaintiff            :
                                         :        (Judge Munley)
         v.                              :
                                         :
                                         :
MARKWAYNE MULLIN,                        :
Secretary Designate,                     :
Department of Homeland Security;         :
HA NGUYEN MCNEILL, Deputy                :
Administrator of the Transportation      :
Security Administration and              :
Senior Official Performing               :
the Duties of the TSA Administrator;     :
CLAY ROBBINS;                            :
ROBERT DUERR; and                        :
RICHARD F. ALTOMARE,                     :
                    Defendants           :

## MEMORANDUM

Travis Smeltz, a retired Federal Air Marshal ("FAM") in the Philadelphia

Field Office ("PFO") of the Federal Air Marshal Service ("FAMS") filed this suit

against the Secretary of the United States Department Homeland Security

("DHS"), the Secretary of the Transportation Security Administration ("TSA"),

alleging retaliation and violation of his civil rights.  He also named supervisors

from his field office as defendants, an Acting Special Agent in Charge, Assistant

Special Agent in Charge, and a Supervisory Air Marshal in Charge.  His federal

claims span Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §

1985 ("Section 1985"). According to Smeltz, he backed his colleagues' Equal Employment Opportunity ("EEO") complaints against PFO leadership and was not selected for a ground-based position with a Joint Terrorism Task Force ("JTTF"). He further asserts that he was not treated equally because of his membership in the Air Marshal Association ("AMA"). These events, which occurred at the end of Smeltz's federal service, also allegedly caused him severe emotional distress. He seeks to recover under state law for the anguish through claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").

There has been an extended dispute over the pleadings in this case. The heads of DHS and TSA, and the FAMS supervisors again seek an overall dismissal of Smeltz's claims. Before the court is their motion to dismiss the second amended complaint, which argues a failure to state a claim under Title VII and Section 1985(3) and a lack of subject matter jurisdiction over the IIED and NIED claims. (Doc. 42). For the reasons set forth below, the motion will be granted in part and denied in part.

**Background**

As alleged, Smeltz served as a Federal Air Marshal for the Federal Air Marshal Service at the Philadelphia Field Office for approximately 20 years until

2

his retirement in June 2021.[1] (Doc. 32, Sec. Am. Compl. ¶¶ 6–7, 13, 18).  In 2014, plaintiff became a delegate for the Air Marshal Association, which is a "member association recognized by TSA that serves as an outside resource for Air Marshals and seeks to improve the working conditions and pay status of its membership." Id. at ¶ 17.  In other words, the Air Marshal Association is a labor organization.

Smeltz alleges that, as a delegate with the AMA, he advocated on behalf of the workforce against employment decisions made on the basis of race, ethnicity, religious practices, gender, and age.[2]  Specifically, in June and October 2019, in

---

[1] These background facts derive from Smeltz's second amended complaint.  The court accepts all facts pled as true, Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted), but makes no determination as to the veracity of the plaintiff's allegations.

[2] There is no age-discrimination claim in the second amended complaint.  However, age-discrimination allegations supply additional background.  In November 2019, during a workforce engagement meeting at FAMS headquarters, Smeltz raised concerns to management about a new metric for performance evaluations being used in the Philadelphia Field Office. Id. ¶ 23.  The measuring system at issue had been implemented by ASAC Robbins. Id.  In May 2020, Smeltz emailed the Director of the Federal Air Marshal Service with further details of his concerns.  Id.

Smeltz's concerns about the measurement system included "improper field office utilization of an unsupported and nonpermitted metric for calculating the total flight days for employees' yearly evaluations." Id.  According to the plaintiff, the "total flight days" metric implemented by ASAC Robbins determined the amount of an monetary award for an employee where more flight days equaled a higher payment.  Under this metric, Federal Air Marshals would be penalized and rated lower for accumulating less total flights, including in circumstances where the Air Marshal: 1) used family leave, medical leave, or agency-mandated vacation time during the rating period; 2) accepted an agency assignment with the United States Secret Service or the United States Border Patrol at the southern border; 3) was on active military deployment; and/or 4) had more training days or non-flight status days scheduled by the agency. Id.  According to Smeltz, the metric implemented by ASAC Robbins "had the effect of discriminating against certain Air Marshals based upon their age" since they had to use more

3

his role as Air Marshal Association representative for the Philadelphia Field Office, plaintiff coordinated communications between association members who had EEO complaints against field office management. Id. ¶ 21. Complaints arose regarding Defendant Clay Robbins, a former Assistant Special Agent in Charge of the Philadelphia Field Office ("ASAC Robbins"). Id. Per plaintiff, he confronted Robbins and other office leadership to resolve association member concerns. Id. The EEO complaints were "directly tied to allegations of affected members of the workforce who believed they were being discriminated against based upon their age, race, gender and/or national origin." Id. ¶ 22.

In July 2020, Smeltz made a "wide-spanning retaliatory harassment complaint" against ASAC Robbins to the then-Supervisory Air Marshal in Charge, John Schall (Robbins's direct supervisor). Id. ¶ 24. Smeltz alleged in his harassment complaint that ASAC Robbins had unlawfully directed plaintiff's removal from an international mission roster due to plaintiff's medical leave status. Id. Smeltz also alleged that ASAC Robbins withheld plaintiff's name from a list of volunteers for a Secret Service detail opportunity and directed Jeffrey Kwam, plaintiff's first-line supervisor, "to make inquiries of plaintiff's role and involvement with the [Air Marshal Association] as part of one of [p]laintiff's

_____

earned annual leave days than younger Air Marshals. Id. The workforce complaints were from those over age 40. Id.

performance appraisals." Id. ¶¶ 20, 24.  Plaintiff alleges that he made the complaint pursuant to TSA Management Directive 1100-73.3 ("MD 1100-73.3"). Id. ¶ 24.  That directive expressly prohibits harassment and retaliation. Id. ¶ 25.

TSA performed monthslong internal factfinding relative to plaintiff's internal complaint against ASAC Robbins. Id. ¶ 27.  ASAC Robbins was interviewed twice about Smeltz's harassment complaints and was asked questions about the performance appraisal metrics for Federal Air Marshals. Id. ¶ 28.  ASAC Robbins also allegedly provided two written statements during the investigation. Id.

At some point during that process, Smeltz applied for a vacancy on a local Joint Terrorism Task Force based out of the Philadelphia Field Office. Id. ¶¶ 13, 20, 28.  According to Smeltz, he had prior direct experience and had received a formal award for his work with this task force as a liaison Federal Air Marshal. Id. ¶ 51.  Specifically, he assisted during an in-flight arrest related to an in-air bomb threat on a flight from Germany into the United States. Id.

Plaintiff interviewed before a panel for the task force vacancy. Id. ¶ 14.  The panel was chaired by ASAC Robbins, the subject of plaintiff's harassment complaint. Id. ¶¶ 14–15, 24, 29.  ASAC Robbins did not recuse himself from the panel or from plaintiff's interview. Id. ¶ 48.  Per Smeltz, the circumstances of the selection process resulted in ASAC Robbins being placed in control of all the information presented to the deciding official. Id. ¶ 42.

As alleged, the deciding official for the task force position was Defendant Acting Special Agent in Charge Robert Duerr ("Acting-SAC Duerr"). Id. ¶ 9, 42. Per Smeltz, Acting-SAC Duerr was also aware of the harassment and retaliation claims plaintiff previously raised against ASAC Robbins. Id. ¶¶ 30. Robbins allegedly recommended to Duerr that plaintiff not be selected, and Duerr allegedly "admitted that he 'primarily' considered the input and recommendations of [] Robbins, despite knowing that the [p]laintiff had an EEO complaint pending against [] Robbins during the interview and selection process[.]" Id. ¶¶ 24, 30, 52.

On January 7, 2021, plaintiff received notice that he did not get selected for the task force position. Id. ¶ 11. The agency investigation of plaintiff's harassment complaint against ASAC Robbins closed approximately 20 days later, on January 26 or 27, 2021. Id. ¶ 22.

According to Smeltz, a less qualified individual was selected for the task force position under suspicious circumstances. Id. ¶¶ 43–52. Plaintiff asserts that the interview process was conducted in an unfair and inconsistent manner and that he was evaluated against other interviewees applying for a different position using different scoring criteria. The second amended complaint highlights various discrepancies in the scoring and ranking of candidates, which Smeltz alleges was meant to intentionally obscure proof that he was the best

6

candidate for the position. Id. ¶¶ 33–39.   Another panelist "stated it was 'unknown' how the person selected for the vacancy…was more qualified than [p]laintiff." Id. ¶ 46.

As a result of his non-selection for the task force position, plaintiff filed a discrimination complaint with the TSA EEO office in February 2021. Id. ¶ 53. That office investigated and conducted a series of hearings and administrative proceedings regarding the EEO complaint. Id. ¶ 54.  Smeltz subsequently filed a complaint with the Equal Employment Opportunity Commission and ultimately received a notice of the right to sue. Id.

Plaintiff further alleges that, as the result of events transpiring during his employment at the Philadelphia Field Office, he "retired/resigned" on June 30, 2021, despite many remaining years of eligibility remaining. Id. ¶ 58.  According to Smeltz, he was deprived of additional pay increases and potentially increased retirement benefits. Id.

Based on the above facts, plaintiff's second amended complaint asserts four claims.  Count One asserts a claim for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.  In Count Two, Smeltz alleges that defendants' conduct amounted to a conspiracy against his civil rights in violation of 42 U.S.C. § 1985(3).  Count Three and Count Four advance state law claims for intentional infliction of emotional distress and negligent infliction of

emotional distress respectively.  Following several extensions, defendants filed a motion to dismiss. (Doc. 42).  That motion will be granted in part and denied in part for the reasons below.

**Jurisdiction**

Defendants target Smeltz's Title VII and Section 1985 claims under Federal Rule of Civil Procedure 12(b)(6).  The court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because they are federal statutes.  Plaintiff's second amended complaint also advances state-law emotional distress torts against the federal government and its employees.  The government attacks the court's subject matter jurisdiction over those claims under Rule 12(b)(1).

**Standard of Review**

**a.  Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction that may only hear a case if the Constitution or a federal statute provides the court with jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) challenges the power of a federal court to hear a claim or case. See Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).  In the face of a 12(b)(1) motion, the plaintiff has the burden to convince the court it has jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000), holding modified by Simon v. United States, 341 F.3d 193 (3d Cir. 2003); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406,

1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion."). As discussed in the later third of this memorandum, defendants argue that Smeltz's IIED and NIED claims must be dismissed under Rule 12(b)(1).

### b. Rule 12(b)(6) – Failure to State a Claim

As for the Title VII and Section 1985 claims, defendants argue that Smeltz has failed to state a claim under either one of these statutes. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as

9

allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

**Analysis**

**1. Title VII Retaliation (Count One)**

The plaintiff, a retired Federal Air Marshal, asserts a claim for workplace retaliation in violation of Title VII.  Under the federal-sector provision of Title VII, "[a]ll personnel actions…in executive agencies…shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a).  In enacting this section, Congress meant to supply federal employees with the full rights granted to individuals in the private sector under Title VII.  Loeffler v. Frank, 489 U.S. 549, 559 (1998).

Title VII further provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he

has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

To state a prima facie claim for Title VII retaliation, Smeltz must plausibly allege that: 1) he engaged in protected activity; 2) the employer took a materially adverse action against him; and 3) there was a causal connection between the protected activity and the adverse action. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022) (citations omitted).

Defendants contend that the second amended complaint fails to allege protected activity and a causal connection. As discussed below, those arguments fall short. Instead of requiring a prima facie case, the requisite pleading standard only requires enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (citations omitted). Smeltz's second amended complaint raises that expectation regarding the Title VII retaliation claim.

### a. Protected Activity

As for protected activity, Title VII contains an opposition clause and a participation clause in its anti-retaliation provision. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006). That is, the

11

statute protects employees participating in Title VII proceedings or opposing discrimination made unlawful under Title VII. Id. at 341.

Smeltz alleges that he supported fellow employees' EEO complaints against ASAC Robbins. (Doc. 32, Am. Compl. ¶ 21). Per the plaintiff, those complaints were based on allegations that Federal Air Marshals were being discriminated against based upon their race, gender, and/or national origin. Id. ¶ 22. Smeltz also avers that he "coordinated communications" and "confronted field office leadership." Id. ¶ 21.

The second amended complaint further describes Smeltz's key role in the Air Marshal Association in support of improved working conditions. Id. ¶ 17. It is reasonable to infer from these allegations that the plaintiff, as an Air Marshal Association delegate, supported others' Title VII-based EEO complaints. Consequently, per Smeltz, this led to reprisal by ASAC Robbins and prompted the plaintiff to make his own "wide-spanning" retaliation complaint in July 2020. Id. ¶ 24. Under the law, an employee engages in protected activity whether they oppose the employer's discriminatory activities or participate in proceedings related to those activities so long as they hold a good faith, objectively reasonable belief that the activities they oppose are unlawful under Title VII. See Moore, 461 F.3d at 341. Smeltz's allegations fit squarely into the requirements for protected activity to support his Title VII retaliation claim.

12

### b. Causation

Defendants also challenge the sufficiency of Smeltz's causation allegations. The plaintiff may rely on temporal proximity, a pattern of antagonism, or other circumstantial evidence to prove causation. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280–81 (3d Cir. 2000).

Defendants focus on the passage of time between the alleged protected activity and Smeltz's non-selection for the task force detail in January 2021, arguing that there is no antagonism or other circumstantial evidence to fill that gap. (Doc. 45, Def. Br. in Supp. at 11–13). Upon review of the second amended complaint, however, there are allegations which permit reasonable inferences of ongoing hostility and friction between the plaintiff and the individual defendants, particularly ASAC Robbins. Those allegations relate to the selection process for the task force position, which began after a period where Smeltz alleges that he supported coworkers' Title VII-related complaints through his role in building up the Air Marshal Association in the Philadelphia Field Office. According to Smeltz, Robbins essentially put his thumb on the scale to ensure that Smeltz would not be selected for the task force role despite the plaintiff being the most qualified. Based on these allegations, there is at least a reasonable expectation that discovery will reveal evidence of the necessary pattern of antagonism and other

13

circumstantial evidence that the plaintiff will need to advance this theory of liability. Smeltz's other alleged issues with ASAC Robbins regarding performance metrics, international mission assignments, and participation in the Air Marshal Association either directly support the causation element or add context during the period in question. Consequently, Smeltz's Title VII retaliation claim will not be dismissed.

### c. Proper Title VII Defendants

Plaintiff brings this Title VII retaliation claim against the Secretary of DHS, the "Secretary" of TSA, and his former supervisors. The claim will move forward against the DHS Secretary and the TSA Administrator only.

It is well settled that Congress did not intend to hold individual employees liable under Title VII. Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996)) (footnote omitted). For federal employees, the Title VII remedy runs against "the head of the department, agency, or unit, as appropriate[.]" 42 U.S.C. § 2000e–16(c); Wadhwa v. Sec'y, Dep't of Veterans Affs., 505 F. App'x 209, 213 (3d Cir. 2012) (citations omitted). Thus, the Title VII claims against Smeltz's supervisors will be dismissed.

Smeltz has also named both the head of DHS and, as fairly construed, the head of TSA as Title VII defendants. The Federal Air Marshal Service sits within

14

TSA.  See 49 U.S.C. § 44917(a) (authorizing the TSA Administrator to deploy Federal Air Marshals). TSA is an administration of DHS. 49 U.S.C. § 114(a). DHS is an executive department. 6 U.S.C. § 111.

By law, the head of TSA is the TSA Administrator, not the "Secretary" of the TSA, as Smeltz has titled that position in his pleadings. Id., § 114(b)(1)(A).  The TSA Administrator is appointed by the President with the advice and consent of the United States Senate. Id.  By law, there is also a Deputy Administrator, who is not subject to Senate confirmation. Id., § 114(b)(2)(A).  During a vacancy in the office of Administrator, the Deputy Administrator acts as the Administrator of the TSA. Id.,§ 114(b)(2)(B). Those administrators report to the DHS Secretary.[3]

Thus, practically speaking, TSA may be led by individuals not subject to the Senate confirmation process.  At the present time, Ha Nguyen McNeill serves as Deputy Administrator and the "Senior Official Performing the Duties of the Administrator."[4]

Given these circumstances, this case will proceed with the DHS Secretary and TSA Administrator as the appropriate Title VII defendants.  At present,

---

[3] See DHS Organizational Chart, https://www.dhs.gov/sites/default/files/2023-11/23_1109_mgmt_dhs-public-org-chart-508.pdf (last accessed 03/17/2026).

[4] See TSA Leadership and Organization, https://www.tsa.gov/about/tsa-leadership (last accessed 03/17/2026).  The individual TSA biographical page for McNeill lists her as "Deputy Administrator. " See id. (link leading users to individual pages).

Secretary Mullin and Deputy Administrator McNeill will be named as the defendants in this case with a designation that McNeill is the acting TSA Administrator.[5]  The Clerk of Court will be directed to amend the caption accordingly.

**2. Section 1985 Conspiracy (Count Two)**

Defendants also move to dismiss Smeltz's Section 1985(3) claim.  This statute imposes liability on two or more persons who "conspire…for the purpose of depriving…any person or class of persons of the equal protection of the laws." Ziglar v. Abbasi, 582 U.S. 120, 150 (2017) (quoting 42 U.S.C. § 1985(3)).  After permitting Smeltz leave to amend this claim previously, it is now clear that it cannot move forward.

Count Two is asserted against all defendants, including the Secretary of DHS and Administrator of the TSA.  As to the heads of DHS and TSA, named in their official capacities only, the claim is barred by sovereign immunity.  Section 1985 does not waive the federal government's immunity from suit for damages, and no other statute supplies the missing waiver.  "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." Treasurer of New Jersey v. U.S.

---

[5] Senator Markwayne Mullin was confirmed by the United States Senate on March 23, 2026 as DHS Secretary.  By rule, he is substituted as a defendant in this action as the successor to previously named heads of DHS. FED. R. CIV. P. 25(c).

Dep't of Treasury, 684 F.3d 382, 395 (3d Cir. 2012).  Therefore, under the law, the court lacks subject matter jurisdiction over plaintiff's Section 1985(3) claim as asserted against the DHS Secretary and the TSA Administrator.

Confronted with this obstacle, plaintiff attempts in his opposition briefing to make a non-monetary claim against the federal defendants.  (Doc. 48, Br. in Opp. at 11–12).  If plaintiff is making a non-monetary Section 1985(3) claim, his second amended complaint needs to be informed.  That is, in the operative pleading, Smeltz expressly requests money damages from defendants with respect to this claim, not injunctive or declaratory relief.  (Doc. 32, Am. Compl. ¶¶ 81–82).  A pleading cannot be amended in a brief in opposition to a motion to dismiss. See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).  The court evaluates the claims as pleaded, and as pleaded, the claims against the Secretary and the Administrator seek money damages. Those claims are barred, and this end-run will be rejected.

Beyond those two officials, Section 1985(3) may be used to redress conspiracies to violate constitutional rights involving individuals acting under color of federal law. Davis v. Samuels, 962 F.3d 105, 115 (3d Cir. 2020).  Smeltz alleges that Robbins, Duerr, and Altomare were acting under color of federal law in their individual capacities. (Doc. 32, Am. Compl. ¶¶ 11, 82).

In order to state a claim against the individual defendants under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997), as amended (May 15, 1997).

As to the individual defendants, the claim falls apart on the second element.[6] That is, a plaintiff must allege a conspiracy motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Under the law, there are requirements related to identifying the class. See Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

According to the second amended complaint, the individual defendants engaged in "concerted action[s]…that were specifically intended to deprive [Smeltz] of justifiable raises, promotions, other positions within the Federal Air Marshal Service for which [he] was preeminently qualified yet rejected, and other actions designed to denigrate and interfere with his ability to function in the

---

[6] Defendants assert a long list of challenges to the Section 1985(3) claim, including an assertion of qualified immunity.  The court need not reach any of the defendants' other arguments.

18

workforce consistent with statutory requirements." (Doc. 32, Sec. Am. Compl. ¶ 73). Per the plaintiff, such conduct included "concerted action beginning in mid-2021 wherein Defendant Altomare began to engage in a targeted pattern of harassing, intimidating, and verbally abusive conduct against Plaintiff and other members of the AMA association, and further began using disciplinary processes and procedures against [Smeltz] and members of the AMA in an effort to weaken and diminish their professional standing." Id. ¶ 74. The individual defendants also allegedly implemented a policy whereby Smeltz and other Federal Air Marshals "were directed not to attempt to utilize earned sick leave or personal time for medically required appointments and/or surgeries." Id. ¶ 75. As Smeltz alleges, he and other Federal Air Marshals "were instructed to reschedule, change or alter existing medical appointments and surgeries so that they would not conflict with operations in the field office." Id.

These allegations are insufficient to state a Section 1985(3) claim. The only class discernable from the allegations is membership within the Air Marshal Association. By its nature, this class could include all, some, or none of the men and women serving as Federal Air Marshals at any given time, depending on nothing more than individual choice. The allegations themselves self-limit the class to Air Marshal Association members in one field office. Even then, it is not clear that Smeltz's allegations apply to every single AMA member in that office.

19

Additionally, Section 1985(3) is aimed at the kind of animus directed at classes of people for who they are, not for what they have chosen to join or advocate for. "Simply put, some groups, particularly those deemed to be distinguishable from others by immutable characteristics, such as African–Americans, women, and the mentally retarded, are so clearly accepted as objectively identifiable that no extended analysis is needed." Farber, 440 F.3d at 137. Specifically, Section 1985(3) was not intended to reach conspiracies motivated by bias towards others on account of their economic or commercial views, status, or activities. United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott, 463 U.S. 825, 837 (1983). Furthermore, discrimination on the basis of political affiliation "is not, as a matter of law, discrimination so invidious such that § 1985(3) would apply." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

Membership in a labor organization or employee association is fundamentally an affiliation based on shared economic or workplace views and interests. In some respects, labor associations may encompass political affiliations or beliefs. Neither of these categories supply the identifiable traits for the plaintiff to recover. One does not become a member of a protected class just by paying dues or by getting a card in the mail.

Rather, a legally cognizable class must be "something more than a group of individuals who share a desire to engage in conduct that the § 1983(3) defendant disfavors." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993). Otherwise, the requirement of class-based animus would be drained of its meaning and Section 1985(3) would be transformed into a general federal tort law that Congress did not intend to enact. Farber, 440 F.3d at 136 (citing Bray, 506 U.S. at 269; Aulson v. Blanchard, 83 F.3d 1, 5 (1st Cir. 1996)). Given the allegations advanced, Smeltz's second amended complaint uses Section 1985(3) as general federal tort law. Accordingly, those claims will be dismissed with prejudice. Amendment would be futile.

### 3. State Tort Claims

Finally, defendants move to dismiss Smeltz's state law claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") on jurisdictional grounds. Defendants assert that Smeltz's IIED and NIED claims are likely covered under the Federal Employees' Compensation Act ("FECA"). They also argue that the plaintiff failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA").

As for FECA, that statute

> was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the

21

principal compromise—the "quid pro quo"—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193–94 (1983).

FECA thus provides the exclusive remedy for federal employees who suffer injuries arising out of and in the course of their federal employment. 5 U.S.C. § 8116(c). Where FECA applies, it operates as a complete jurisdictional bar to FTCA claims. DiPippa v. United States, 687 F.2d 14, 17 (3d Cir. 1982).

The question of whether a particular claim falls within FECA's coverage is committed to the Secretary of Labor, and the Secretary's determination on that question is not subject to judicial review. 5 U.S.C. § 8128(b); see also Heilman v. United States, 731 F.2d 1104, 1109 (3d Cir. 1984); Spade v. United States Dep't of Justice, No. 21-1865, 2022 WL 444259 at *2 (3d Cir. Feb. 14, 2022). The Secretary of Labor need not make a final adjudication of benefits. Where the Secretary of Labor, acting through the Office of Workers' Compensation Programs ("OWCP"), determines that a substantial question of FECA coverage exists, that determination divests the district court of subject matter jurisdiction over the tort claims. See 5 U.S.C. §§ 8128(b), 8145; 20 C.F.R. § 10.1; Spade, 2022 WL 444259 at *3 (citing Heilman, 731 F.2d at 1110).

22

Here, the Secretary of Labor, through her OWCP designee, has reviewed the second amended complaint and determined that there is a substantial likelihood of FECA coverage for the injuries plaintiff alleges. (Doc. 45-1). The court thus lacks subject matter jurisdiction over the IIED and NIED claims in Counts Three and Four of the second amended complaint.

Even if FECA did not preempt Smeltz's tort claims, the court would lack jurisdiction over such claims because plaintiff has also failed to exhaust his administrative remedies under the Federal Tort Claims Act.

The FTCA requires that a claimant present an administrative claim to the appropriate federal agency before filing suit in district court. 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. See McNeil v. United States, 508 U.S. 106, 113 (1993).

Smeltz does not argue that he filed an administrative claim with DHS or TSA. Instead, he argues that his EEOC complaint satisfies the FTCA's exhaustion requirement. (Doc. 48, Pl. Br. in Opp. at 20–21). It does not. The EEOC process and the FTCA administrative claims process are separate mechanisms, administered by different agencies, under different statutes, for different purposes. Therefore, even if Smeltz is unable to proceed under FECA, he failed to exhaust his claims under the FTCA. The IIED and NIED claims will be dismissed for lack of jurisdiction.

**Conclusion**

Consistent with the analysis above, defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted as to Smeltz's Title VII claims against Defendants Robbins, Duerr, and Altomare and his Section 1985(3) claims against all defendants for failure to state a claim. The motion will granted as to Smeltz's IIED and NIED claims against all defendants for lack of subject matter jurisdiction. There are no viable claims left against Defendants Robbins, Duerr, and Altomare. They will be terminated as defendants in this action. This case will proceed only with respect to Smeltz's Title VII retaliation claim against the heads of DHS and TSA. The Clerk of Court will be directed to amend the caption to name them properly.

An appropriate order follows.

Date: 3/34/26

_____
JUDGE JULIA K. MUNLEY
United States District Court

24